Curia, per

Dargan, Ch.
In the argument of this appeal, many questions have been presented, and earnestly urged *213 upon the attention of the Court. From the disposition which the Court has thought proper to make of the case, it will not, be necessary for me to notice and discuss in this opinion, all the questions that have been made.
The complainants are the sons of Mrs. Sarah Hopkins. The. defendant’s intestate, and late husband, John A. Hopkins, was also her son, and lived with her, while the complainants lived in the west. The bill charges that John A. Hopkins was the agent of his mother, Mrs. Sarah Hopkins, and sold her cotton and some other property, and that, by virtue of this agency, he sold her cotton, and received the proceeds of the same, from the year 1834 to the year 1845, inclusive, with the exception of the year 1841 ; for which he has never accounted, and is still indebted to a large amount. It is also stated in the bill, and is proved, that Mrs. Hopkins has executed an assignment to the complainants, of her account against the estate of the intestate; the items of which consist of the proceeds of the sales of the cotton, charged to have been received by him in the years before mentioned, of some money lent, and the proceeds of the sales of some mules. The assignment purports to have been executed for valuable consideration, but it is admitted that the consideration was love and affection. The answer of the defendant denies all knowledge of the transactions stated in the bill, which she alleges relate to a period of time before her intermarriage with the intestate, while she lived in another district, and was a stranger to the relations that subsisted between the different members of this family. These are the simple facts of the case, upon which I am to announce the judgment of this Court.
The first point to which I will direct my attention will be the plea of the statute of limitations, which the presiding Chancellor held to have barred the claim, with the exception of such portion of it as arose within four years before the filing of the bill. There is not the slightest difference of opinion between the members of this Court as to the principles of law which bear upon this question. If there was a general or continuing agency, the .statute would not commence to run until the termination of the agency. Assuming that there was a general and continuing agency, the statute would not bar the account; as the agency (if such an one existed) continued to the day of the intestate’s death, and the bill was filed within one year afterwards. If the agency was special, and related to isolated transactions, in regard to which the intestate received special authority from his mother to act for her in those particular matters, then the statute would commence to run from each of those several transactions ; and each of which would be barred or not, according to the time that had elapsed from their respective dates to *214 the filing of the bill. From the fragments of the evidence have been pointed in the brief, it would seem that there ’ was a general agency. But the Chancellor who tried the cause is of the opinion that if all the evidence had been presented, the conclusion to be deduced from the whole would be, that the agency was special. The brief in this case was very imperfectly prepared. And this has been the case with a great many oí the briefs furnished during this term, which has occasioned much difficulty and embarrassment to the Court. I will take the occasion to say, that this affords just ground of complaint; and further to remark, that if error and misconception arise from this cause, there cannot be a doubt as to where the responsibility should fall. From the view which the Court has taken of this case, the plea of the statute of limitations becomes unimportant. And I should not have felt it necessary to remark upon it. but for the purpose of preventing misapprehension.
The assignment of an open account, or a chose in action not negotiable by mercantile law, or assignable by legislative enactments, vests no legal title or interest in the assignee; who, for this reason, can maintain no legal action on the same in his own name. But it is different in this Court, where the assignee may enforce, by a suit in his own name, choses of this character, which have been assigned to him for a valuable consideration ; subject, of course, to the equities that subsisted between the original patties. Nor can it be doubted that an assignment from a parent to a child, of choses in action, not assignable at law, and of mere equities, may be supported in this Court, on the consideration of love and affection. The Court can and has enforced such claims, in suits brought in the name of the assignees. But in either case, whether the assignment be made for valuable consideration, or for the consideration of love and affection between parent and child, the bonafides of the assignment may become the subject of inquiry in this Court, and if, on investigation, that be found wanting, the Court will refuse its aid. It does not follow, unless there be fraud, that the Court will affect to set aside the assignment. But if an unconscientious advantage is sought to be taken, the Court will withhold its assistance, and leave the party to struggle with his difficulties in the best way he can. In such an event, he would have no other remedy than to prosecute his action at law in the name of the original creditor.
This Court is of the opinion that where the assignee of an open account, or of such choses as are the subject matter of this suit, files his bill in Equity against the debtor, to enforce the demand or demands which have been assigned to him, the assignor should be made a party, either complainant or defendant. This, perhaps, may not be necessary, when the *215 assignor has parted with his whole estate in the chose, both legal and equitable. But the demands in this account thatv have been assigned to the complainants, are all legal choses ; that is to say, they are choses upon which an action may he maintained at law by the party to whom they were originally due. The assignee has a mere equitable interest, while the legal estate remains in the assignor. The assignor should be made a party, therefore, on the general rule, that all persons having an interest, legal or equitable, should be made parties to the proceeding. There is something more than form in the enforcement of this rule incases like the present. It serves to meet and carry out the substantial justice of the case. When a creditor, either by himself or his assignee, files his bill against the defendant for an account,'the claim is subject to all equitable discounts which the defendant may succeed in establishing against it. If, on stating the accounts, there is a balance found in favor of the defendant, he is entitled to a decree for such balance. A party praying an account is entitled to it only on the condition that if, on a settlement, he should be found to be the debtor, a decree should go against him for the balance. This is pure equity. And the converse of it would be highly inequitable, and would lead to circuity of actions and multiplicity of suits. But this wholesome rule of justice could not be enforced, and this responsibility would be evaded, if the assignee were permitted to file a bill for an account, without making the assignor a party. The assignee would not be liable for any balance in which the assignor should be found indebted to the defend-, ant. He should, therefore, bring in the assignor as a party, who would be liable for a decree for such balance, and thus prevent the vexation, expense and delay of another suit, on the part of the defendant; and save the Court the trouble of trying two causes, where one would answer every purpose. This Court is therefore of the opinion that Mrs. Hopkins, the assignor, should have been a party to the bill, either as a complainant or defendant. And further, the Court is of the opinion that, being a party, and an interested party, she could not be a competent witness. -The assignee would be entitled to any balance that would be found due by the defendant; but it is obvious that the accounting of the defendant would be with the assignor, who would go into the examination, subject to the liability of a decree against her if a balance should be found due to the defendant. It would be to the interest of the assignor to swell the amount of her claims against the defendant, and to reduce his against herself. She would, for this reason, be incompetent.
The complainant’s solicitor has asked the Court, in the event of Mrs. Hopkins being a necessary party, that he be allowed, by an order of this Court, to amend his bill, so as to *216 make her a party. This, of course, is equivalent to asking (for another trial. It is to be remarked that the defendant ' has insisted upon the objection as to the want of a necessary party, during the whole progress of this cause. She first filed a general demurrer, which embraced the objection as to the want of parties, where, as in this case, the omission of a proper party appears upon the face of the bill. The demurrer being overruled, she urged the same objection in her answer. She urged it upon the hearing on the Circuit, and again on the hearing before this Court. During all these successive stages of the litigation, the complainants have persisted in their course, and have not moved to amend for the purpose of making a new party. But, after the final hearing on appeal, they ask, not by motion, but by parol, in the event the Court should be of the opinion that Mrs. Sarah Hopkins is a necessary party, that they be allowed to amend. The competency of the Court, in the exercise of its discretion to do this, and on its own motion, is not doubted. It would be done on a proper occasion. It was done in Neely v. Anderson, where the question was not made in the pleadings, nor discussed in the Circuit Court. But it was discovered that the case involved the rights of infants, who were not parties. The decision would of course not be binding upon them, nor terminate the litigation. Under these circumstances, this Court, in the exercise of its undoubted discretion, and on its own motion, ordered the bill to be amended, and the infants to be made parties. When a party has submitted his case, upon a final hearing, to the judgment of the Court, he has no right to the privilege of being allowed to amend. He should have done that at an earlier stage of the proceedings ; more particularly, where he has been notified by the plea of the adverse party.
Dec. Term, 1848.
But I will now discuss the ground upon which I am more particularly instructed by the Court to place its judgment. I have already stated that where there has been an assignment (for valuable consideration, or for the consideration of love from a parent to a child,) of legal ckoses that are unassignable at law, this Court will entertain a bill, in the name of the assignee, for the enforcement of such claims ; provided, that the assignor be made a party either as a complainant or defendant; and provided also, there be bona jides in the transaction of the assignment. If the object be to obtain an un-conscientious advantage over the party to be brought to the reckoning, the Court will not lend itself to the enforcement of the inequitable arrangement. It seems to the Court that the purpose of the parties to this assignment was not in good faith to the defendant. The object was to obtain an undue advantage, by enabling Mrs. Sarah Hopkins to become a witness in establishing her account against the estate of her *217 deceased son. From the relations between the assignor and the assignees, it did not matter much to her whether she or they got the benefit of this claim. If she wished to make a donation of this amount to her sons, why did she not sue for it in her own name, and, after recovery, give it to them 1 It cannot be doubted that the assignment was a mere contrivance to recover, by means of her own testimony, a claim which she could not otherwise recover. The arrangement was in their understanding to have the effect of opening her mouth as a witness, while the lips of the defendant were to remain hermetically sealed. Death had stamped his cold signet upon the lips of the other party to the contract. He could not speak from the grave. If he were living, he would not have been allowed to speak as a witness; but he would know in what manner best to make his defence. If his wife were allowed to speak as a witness, although she was necessarily ignorant of many of. the alleged facts, she might have testified to what she stated in her answer, that, shortly after her husband’s death, Mrs. Hopkins came to her house, and .desired to see the account of sales of the preceding year, amounting to $ 180, stating that her son had not settled for that, but making no claim for the sales of the preceding years. I allude to this for the purpose of illustrating how little it tends to the development of truth, and the attainment of justice, to receive in evidence the statements of one party to a legal controversy, without receiving those of the other. Just such a state of things has the contrivance of the complainants and their co-laborer produced. Mrs. Hopkins, according to her own statements, had demands against her deceased son. They were demands that were properly cognizable at law, and if she had resorted to that Court, she would have occupied her natural and proper position of a plaintiff, and would be bound to prove her case by disinterested testimony. Knowing or fearing that she would not be able to succeed in a Court of Law, the contrivance of the assignment was resorted to, for the purpose of enabling the case to be brought into this Court, where it was supposed she might be a witness. The mala fides in the transaction of the assignment, according to the principles which I have before stated, is a sufficient ground for the Court to refuse to entertain the complainant’s case; more especially, where the claim at best wears a somewhat equivocal character, and it seems that substantial justice has already been done by the decree of the Circuit Court.
It is ordered and decreed that the decree of the Circuit Court be affirmed, and that the appeal be dismissed.
Dunkin, Ch., concurred.

Decree affirmed.